# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

(1) WAREHOUSE MARKET, INC.,

    Plaintiff,

v.                               Case No. _____

(1) STATE OF OKLAHOMA, ex rel.
OKLAHOMA TAX COMMISSION,

    Defendant.

## COMPLAINT

Plaintiff Warehouse Market, Inc., seeks a declaratory judgment that State of Oklahoma, ex rel. Oklahoma Tax Commission ("OTC"), is not entitled to tax retail sales at Warehouse Market's grocery store, which is located on restricted Indian land in Okmulgee, Oklahoma. Warehouse Market alleges and states the following:

## PARTIES, JURISDICTION, AND VENUE

1. Plaintiff Warehouse Market is an Oklahoma company incorporated in the State of Oklahoma with its principle place of business in Tulsa County, Oklahoma, and is authorized to do business in Oklahoma.

2. Defendant OTC is an agency of the State of Oklahoma with an office in Tulsa, Oklahoma.

3. Jurisdiction is proper in this court under 28 U.S.C. § 1331 because this civil action presents a federal question arising under the Constitution, laws, and treaties of the United States. Venue is proper in this court under 28 U.S.C. § 1391(b)(1), § 1391(b)(2), and § 1391(b)(3).

1

**FACTS**

4. Warehouse Market operates a grocery store known as Cox Cash Saver Cost Plus, which is located in a shopping center at 1701 S. Wood Drive in Okmulgee, Oklahoma.

5. The shopping center is located on restricted Indian land within the jurisdiction of the Muscogee (Creek) Nation, a federally recognized tribal government.

6. Under its lease, Warehouse Market pays monthly rent to Pinnacle Management & Consulting, LLC, a limited liability company, which leases the property through a Bureau of Indian Affairs master lease.

7. Until October 2018, Warehouse Market had been collecting and paying a 10.083 sales tax to OTC on the taxable sales of items at the store.

8. In September 2018, Warehouse Market was forwarded a letter from the Muscogee (Creek) Nation, stating that under the BIA master lease, effective October 1, 2018, any retail sales on the property were subject to a six percent sales tax, payable to the Muscogee (Creek) Nation Tax Commission.  The letter further stated that it was the Muscogee (Creek) Nation's position that Warehouse Market had no obligation to pay taxes to any city, county, or state agencies, because the Muscogee (Creek) Nation Tax Commission was the only authorized taxation agency allowed to assess or collect taxes on restricted land.

9. Warehouse Market submitted full payment of six percent of its October sales to the Muscogee (Creek) Nation and an additional 10.083 percent to the OTC, and notified the OTC that pursuant to the Muscogee (Creek) Nation's notice, Warehouse Market would stop remitting state and local taxes to the OTC.

10. On November 21, 2018, OTC sent a letter to Warehouse Market, stating that sales on restricted Indian land were subject to state and local taxes; that Warehouse Market was not

relieved from the requirements of the Oklahoma Tax Code; and that failure to remit state and local sales to the State would result in closure of the business and/or revocation of the business's sales tax permit.

11. On November 30, 2018, Warehouse Market received a notice from the Muscogee (Creek) Nation Office of the Tax Commission stating that Warehouse Market was in violation of the Tribal Sales Tax rules and would be subject to interest, fines, and/or revocation of license(s) if remedial action was not taken.

12. Warehouse Market filed an interpleader action in state court, Okmulgee County Case No. CV-2018-96, naming OTC, Pinnacle Management & Consulting, LLC, and the Muscogee (Creek) Nation as Defendants. The Muscogee (Creek) Nation was dismissed, and summary judgment in Warehouse Market's favor against OTC was granted on November 21, 2019. In its order, the trial court stated, "Defendant Oklahoma Tax Commission is not currently entitled to retail tax proceeds at Plaintiff's subject matter retail establishment <u>unless</u> and <u>until</u> the legitimate dispute between the Muscogee (Creek) Nation and the Oklahoma Tax Commission as to taxation authority is resolved in another forum or tribunal." (Emphasis in the original). OTC has appealed that decision to the Oklahoma Supreme Court in Case No. 118,504.

13. OTC is continuing to insist it is entitled to tax all sales at Warehouse Market's Okmulgee store.

14. Warehouse Market is continuing to collect 10.083 percent sales tax from its customers, pending a final decision on the question of the State of Oklahoma's right to tax sales on restricted Indian land.

**FIRST CAUSE OF ACTION: DECLARATORY JUDGMENT**

15. Warehouse Market adopts by way of reference each allegation set forth above in

3

paragraphs 1-14.

16. The federal question presented is whether the State of Oklahoma can collect sales tax on retail sales at Warehouse Market's Okmulgee store, which is located on restricted Indian land.

17. OTC's attempt to tax is contrary to the general, long-time Federal policy of encouraging tribal self-sufficiency and economic development.

18. OTC's attempt to tax sales on Indian land frustrates that goal, because no business would agree to open a retail store on restricted Indian land that was required to collect double taxes from its customers -- six percent for the Nation, and 10.083 percent for the State.

19. OTC's attempt to tax is also contrary to 25 C.F.R. § 162.017(b), the specific Bureau of Indian Affairs' regulation stating that sales under a lease on Indian land are "subject to taxation by the Indian tribe with jurisdiction" and are "*not subject* to any . . . tax . . . imposed by any State or political subdivision of a State." (Emphasis added).

20. Further, OTC's attempt to tax is preempted under the balancing test enunciated by the United States Supreme Court in *White Mountain Apache Tribe v. Bracker*, 448 U.S. 136, 100 S.Ct. 2578 (1980), which barred a State from imposing a motor carrier license tax and fuel use taxes on non-Indian logging companies that harvested timber on a reservation.

21. That test requires "a particularized inquiry into the nature of the state, federal, and tribal interests at stake, an inquiry designed to determine whether, in the specific context, the exercise of state authority would violate federal law." *Bracker*, 448 U.S. at 145, 100 S.Ct. at 2584.

22. Examining these interests leads to the conclusion that the State should not be allowed to tax sales at the Okmulgee store:

    a. The Federal Government's "overriding goal" is Indian self-government

through "encouraging self-sufficiency and economic development," *Shivwits Band of Paiute Indians v. Utah*, 428 F.3d 966, 981-82 (10th Cir. 2005), 99 (1982).  This goal is frustrated if commercial tenants on Indian land were required to collect state and tribal taxes from their customers.  Further, Federal interests are greatest when the government's regulation of a given sphere is "comprehensive and pervasive," *Tulalip Tribes v. Washington*, 349 F. Supp. 3d 1046, 1057 (W.D. Wash. 2018), which is the case here: "the federal government administers an extensive, exclusive, comprehensive, and pervasive regulatory framework governing the leasing of Indian land." *Seminole Tribe of Fla. v. Stranburg*, 799 F.3d 1324, 1341 (11th Cir. 2015).

      b.      The Muscogee (Creek) Nation has a financial interest in the State refraining from taxing sales on Indian land, because the additional State tax that a lessee has to pay makes leasing the property unworkable.  Plus, there is the additional interest of tribal sovereignty, "which historically gave state law 'no role to play' within a tribe's territorial boundaries." *Wagnon v. Prairie Band Potawatomi Nation*, 546 U.S. 95, 112, 126 S. Ct. 676 (2005).

      c.      The State interests are not as strong.  Oklahoma's State's sales tax statute is designed "to provide funds for the financing of the program provided for by the Oklahoma Social Security Act and to provide revenues for the support of the functions of the state government of Oklahoma," 68 O.S. § 1353(A), indicating that the interest of the State in its sales tax is for the purpose of raising general revenue.  A state's generalized interest in raising revenue is not sufficient "to permit its proposed intrusion into the federal regulatory scheme." *Bracker*, 448 U.S. at 150, 100 S. Ct. at 2587.

    23.    *Bracker* also states that in balancing the competing interests at stake, the imposition of the State tax is impermissible where (a) the Federal Government has undertaken comprehensive regulation; (b) a number of the policies underlying the federal regulatory scheme are threatened

by the taxes; and (c) the tax cannot be justified except in terms of a generalized interest in raising revenue.  *Bracker*, 448 U.S. at 151, 100 S.Ct. at 2588.

24.     Analyzing these interests also leads to the conclusion that the State should not be allowed to tax sales at the Okmulgee store:

a.     Comprehensive Federal regulation: The preamble to the BIA regulation published in the Federal Register expressly states that the federal regulatory scheme for Indian leasing is comprehensive and precludes state taxation.  77 Fed. Reg. 72447.

b.     Policies threatened by the tax: as stated above, the policy of encouraging economic development of the tribes is obviously threatened by the State tax, because the Muscogee (Creek) Nation could not attract tenants who were required to collect both State and Tribal taxes from their customers.

c.     Justification for the tax: as stated above, OTC only has a "generalized interest in raising revenue," which is not sufficient.  *Bracker*, 448 U.S. at 151, 100 S.Ct. at 2588.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Warehouse Market respectfully prays for a judgment in is favor as follows:

1.     Warehouse Market seeks a declaration that Defendant State of Oklahoma, ex rel. Oklahoma Tax Commission is not entitled to tax retail sales at Warehouse Market's Okmulgee, Oklahoma grocery store.

2.     Such further relief as the Court may deem appropriate.

Respectfully submitted,


*s/Randall Jay Lewin*
James H. Ferris, OBA No. 2883
Randall Jay Lewin, OBA No. 16518
Scott Morgan, OBA No. 30183
**MOYERS MARTIN, LLP**
Mid-Continent Tower
401 South Boston Avenue, Suite 1100
Tulsa, Oklahoma 74103-4028
Telephone: (918) 582-5281
Facsimile: (918) 585-8318
ferris@moyersmartin.com
smorgan@moyersmartin.com
rlewin@moyersmartin.com
***Attorneys for Plaintiff Warehouse Market, Inc.***